# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

**FRED DEWITT MUNN,**

    Plaintiff,

v.                                           No. CIV 17-047-RAW-SPS

**JOE ALLBAUGH, et al.,**

    Defendants.

## OPINION AND ORDER

This action is before the Court on Defendants' motion to dismiss or for summary judgment. The Court has before it for consideration Plaintiff's complaint (Dkt. 1), Defendants' motion (Dkt. 37), a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (Dkt. 41), and Plaintiff's response to Defendants' motion (Dkt. 44).

Plaintiff, an inmate in the custody of the DOC who is incarcerated at Oklahoma State Penitentiary (OSP) in McAlester, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at that facility. The defendants are Joe Allbaugh, DOC Director; Kevin Duchworth, a.k.a. Kevin Duckworth, Acting OSP Warden; Terry Royal, OSP Warden; Cherrie Guay, OSP Canteen Officer; Dr. Phil Marlar, OSP Physician; and Regina Van Blaricom, OSP Health Services Administrator.

**Standard of Review**

The Court has carefully reviewed the record and construes Plaintiff's pleadings liberally. *Haines v. Kerner*, 404 U.S. 519 (1972). This relaxed standard, however, does not relieve his burden of alleging sufficient facts on which a recognized legal claim could be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. However, a party opposing a motion for summary judgment may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Medical Treatment Claim**

Plaintiff alleges he has life-threatening, "malignant metastatic breast cancer disease," which requires continuous medical treatment at the University of Oklahoma Medical Center ('OUMC") in Oklahoma City. He alleges in his extremely disorganized

and repetitive complaint that the defendants hate him and have conspired to "harass, punish, and retaliate against [him]" for filing this lawsuit. He further claims all the defendants are "acting intentionally" in a conspiracy to have him killed to avoid paying for his expensive medical treatment. He further asserts Defendant Dr. Marlar has threatened to kill him by giving him a poisoned version of the medication he is supposed to receive by injection for his treatment. Plaintiff contends the injections of Lupron Depot for treatment of his cancer are supposed to be administered at a hospital by cancer specialists. Dr. Marlar, however, advised him that the injections would be given at the prison. (Dkt. 1 at 4). Plaintiff, therefore, refuses to consent to having Dr. Marlar administer the injections at OSP. (Dkt. 1 at 4-8).

Defendants allege Plaintiff has failed to exhaust the administrative remedies for this claim. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)

3

(citation omitted).

According to the DOC Offender Grievance Process, OP-090124, an inmate first must attempt to resolve his complaint informally by communicating with an appropriate staff member within three (3) days of the incident. If this initial attempt at resolution is unsuccessful, the inmate must submit a Request to Staff (RTS) to the law library supervisor or other designated staff member within seven (7) calendar days of the incident. The supervisor or designee forwards the RTS to the appropriate staff member who then must respond to the RTS in writing within ten (10) working days of receipt. After the RTS is answered, the inmate may submit an Inmate/Offender Grievance Form, along with the answered RTS, to the reviewing authority. The grievance form must be submitted within fifteen (15) days of the incident or receipt of the answer to the RTS, whichever is later. If the reviewing authority rejects the inmate's grievance, the inmate then may appeal to the Administrative Review Authority (ARA) within fifteen (15) days of receipt of the reviewing authority's grievance response. The ruling of the ARA is final and concludes the internal grievance process available to the inmate. (Dkt. 41-3).

The record shows Plaintiff submitted Requests to Staff concerning his medical claim on July 16, 2016, September 1, 2016, and September 6, 2016, each inquiring whether he had an appointment at the "OKC Hospital" to receive the Lupron Depot injection (Dkt. 41-9 at 94, 107, 109). Each RTS was answered by informing Plaintiff he was scheduled. *Id*. After the DOC staff elected to provide Plaintiff the injection at his facility beginning on

January 4, 2017, Plaintiff submitted no RTSs demanding to be taken to OUMC for an injection (Dkt. 41-9). In addition, Plaintiff submitted no grievances related to the Lupron injection (Dkt. 41-4).

Plaintiff has made notes in the margin of his complaint stating the defendants will not answer his RTSs, thereby denying his right to file grievances (Dkt. 1 at 9, 13). A prisoner must exhaust only those remedies that are "available." *See Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable,' and a court will excuse the prisoner's failure to exhaust." *Id.* (citation omitted). A prison official improperly thwarts a prisoner's attempt to exhaust when he rejects a prisoner's grievance appeal on grounds not permitted by the relevant regulations. *Id.* at 1249-50.

Plaintiff attached to his complaint an Inmate/Offender Grievance form dated January 6, 2017, which purports to be "Administrative Exhaustion" concerning the injection issue (Dkt. 1 at 14). There is no indication on the grievance form, however, that it ever was received by appropriate staff, because there is no grievance number, code, or response date noted.

Defendants assert that if Plaintiff had properly filed the grievance, these notations would have been included, and a proper copy would have been returned to him for his records. In addition, there is no record of this grievance having been filed at OSP (Dkt. 41-4). Even if this grievance had been properly filed, there is no record of Plaintiff's filing

5

an RTS regarding this issue; therefore, the grievance would have been filed in error.

After consideration of the pleadings and other submitted materials, the Court is of the view that there are no genuine issues of material fact with respect to whether this claim is unexhausted. The Court further finds Plaintiff has not shown he was prevented from exhausting his administrative remedies for this claim. Therefore, summary judgment is granted on this issue.

**Pepper Spray Threat**

Plaintiff alleges that on January 5, 2017, OSP Lt. Williams threatened to pepper spray him, if he did not go to Dr. Marlar's office and allow Dr. Marlar to give him the poisoned Lupron injection.[1] Plaintiff told Dr. Marlar he only would accept the injection at OUMC/ Presbyterian Hospital in Oklahoma City, and Dr. Marlar signed refusal forms on January 5 and 6, 2017. Marlar allegedly enlisted other OSP staff members to conspire to lie about Plaintiff's refusal, all in their attempt to kill him. Plaintiff maintains he did not refuse the injection, but he insisted the injection must be administered by a cancer specialist at the hospital. (Dkt. 1 at 9).

Defendants assert that threats by staff are considered grievable issues under the DOC Grievance Procedure (Dkt. 31-3 at 3). There is no record, however, that Plaintiff filed any RTS regarding the alleged threat of pepper spray (Dkt. 41-9). Because there is no genuine issue of material fact with respect to whether this claim is unexhausted,

---

[1] Lt. Williams is not a defendant in this action.

summary judgment is granted on this issue.

**Property Claim**

Plaintiff alleges his boots, shoes, and headphones never were mailed to his home. He maintains this property was stolen, and Defendant Cherrie Guay, former OSP Property Officer,[2] lied about the property to Defendant Kevin Duchworth, OSP Acting Warden. Plaintiff also asserts the $14.15 disbursement for postage to ship his property was deducted from his account on April 28, 2016, and then repaid to his account on May 19, 2016. (Dkt. 1 at 8).

The record shows that on March 22, 2016, Plaintiff was sent a notice advising he had unauthorized property that exceeded the amount allowed at OSP, and he would have to dispose of it (Dkt. 41-14 at 2). One item was described as a "box weighing approx 50 lbs." *Id.* On March 23, 2016, Plaintiff was sent a second notice to dispose of his unauthorized property. *Id.* at 3. He was instructed to provide proof of purchase for the tennis shoes that were found in his property. Other items were described as "metal watch, lock, lamp, cups, bowls, light bulbs, pens/pencils, broken eyeglasses, extra soap dish, altered cord" *Id.*

On March 30, 2016, Plaintiff sent an RTS to the property officer, requesting that his excess property be sent to his aunt. *Id.* at 4. The March 31, 2016, disposition of the RTS stated, "CM [case manager] has sent PRR&R for D. When mailouts are completed your

---

[2] Defendant Guay has not been served (Dkt. 40).

items will be sent per your directions. Receipts will be sent to you." *Id*. at 4 Plaintiff's property release receipt, signed March 31, 2016, included "timberland boots black size 11," "headphones not sold at OSP," and " Skechers Size 11 tennis shoes." *Id.* at 5. On April 1, 2016, however, an Incident Report by the property officer indicated the boots retrieved from Plaintiff on March 25, 2016, could not be located. *Id*. at 6. The supervisor's response stated, "request for camera footage to be renewed. No further action needed." *Id.* An undated receipt indicates Plaintiff approved disbursements for postage to send four boxes, with one box remaining. *Id*. at 7.

On April 4, 2016, an RTS from Plaintiff, dated March 31, 2016, was received by the property officer. *Id*. at 8. The RTS requested disposition of his excess property. *Id*. The response, dated April 6, 2016, stated in part, "You submitted a PRR&R for D, dated 3/31/16. Per written direction, property was processed accordingly. The boxes were sent this morning. . . . Only items not sent out are shoes, boots & headphones." *Id.*

On April 6, 2016 an Offender Request dated April 5, 2016, was sent by Plaintiff to the property officer, essentially repeating the RTS request for his excess property to be sent out. *Id*. at 9. The April 6, 2016, response again informed Plaintiff that action had been taken, stating, "Only items not sent are shoes, boots and headphones." *Id.*

On April 11, 2016, yet another RTS by Plaintiff, dated April 7, was sent to the property officer, requesting in relevant part, "headphones, tennis shoes, (boots?)." *Id.* at 10.

The response, dated April 12, 2016, stated in part, "Provide proof of purchase for

8

tennis shoes as instructed on NOF dated 3/23/16." *Id.* An email chain between April 12, 2016, and April 15, 2016, indicated Plaintiff's boots had been missing, but were found. *Id.* at 11.

On April 28, 2016, Plaintiff filed a grievance requesting to be allowed to mail his boots, Skechers tennis shoes, and headphones home. *Id*. at 12-13. He was granted relief on May 16, 2016, in a decision stating:

> Offender Munn you requested on March 31, 2016, that unauthorized property seized upon arrival to OSP be brought to you on SE 8, Property Officer responded to your RTS on April 6, 2016, stating that per previous direction of you your excessive property (shoes, boot, and headphones) will be processed accordingly. Per Property Officer your items mailed out on 4/28/16. Relief granted.

*Id*. at 14.

On January 6, 2017, an RTS from Plaintiff, dated December 27, 2016, was sent to the property officer, accusing Defendant Guay, the previous property officer, of stealing his boots, tennis shoes, and headphones. He asked the property officer to look in the property room for a box containing these items. No response was provided. *Id.* at 15. There is no indication Plaintiff filed a grievance to the reviewing authority concerning the lack of response, pursuant to OP-090124(IV)(C)(11) (Dkt. 41-3 at 9).

Also on January 6, 2017, an RTS from Plaintiff was sent to Case Manager Bobby Tharpe, requesting a transfer to a specific facility, claiming his life was in jeopardy because of OSP staff and prisoners. In addition, the RTS stated his boots, tennis shoes, and headphones had been stolen. (Dkt. 41-14 at 16-17). The response stated, "I will look

9

into this." *Id.* at 16. A case note entry by Tharpe on March 31, 2017, stated in part, "Spoke with inmate about any issues he may be having. Inmate stated no issues at this time." *Id.* at 18.

Here, the Court finds that to the extent Plaintiff's property allegations concern the alleged misconduct of Defendant Guay, he was unable to serve her, despite assistance from the United States Marshals Service (Dkts. 36, 40). Therefore, Defendant Guay must be dismissed without prejudice for Plaintiff's failure to serve her pursuant to Fed. R. Civ. P. 4(m).

With respect to other defendants who may have been involved in this claim, deprivations of property only arise under § 1983 if the deprivation is unlawful and if the plaintiff did not have an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Here, Plaintiff was not allowed his property because it exceeded the amount permitted at OSP. He utilized the DOC internal grievance process and, according to the defendants, he was granted relief. Plaintiff disagrees with this assessment, and still asserts he is due compensation of at least $170.00 for his boots, shoes, and headphones (Dkt. 44 at 16).

In addition, Plaintiff apparently did not complete the exhaustion of his administrative remedies by an appeal to the Administrative Review Authority. Nor did he pursue a remedy under state law for the alleged loss of his property. *See* OP-030120(VII)(A) (Dkt. 41-13 at 7) ("Reimbursement for lost or damaged secured property will only be made in accordance with Oklahoma law," pursuant to Okla. Stat. tit. 51, §

151).

After careful review, the Court finds Plaintiff has not shown the mailing did not actually occur or that Defendants unreasonably failed to follow his mailing instructions. He also has not shown an unlawful deprivation, and that he did not have an adequate post-deprivation remedy. *Hudson*, 468 U.S. at 533.

Furthermore, the Court finds Plaintiff has failed to show the personal participation of Defendants Allbaugh, Royal, Duckworth, or Van Blaricom in this or any of the other alleged constitutional violations. "Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted). *See also Mee v. Ortega*, 967 F.2d 423, 430-31 (10th Cir. 1992). Plaintiff must show that a defendant personally participated in the alleged civil rights violation. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Supervisory status is not sufficient to support liability under § 1983. *Id*. *See also Polk County v. Dodson*, 454 U.S. 312, 325 (1981). Plaintiff has not met this burden. Summary judgment is granted for this claim.

**Conspiracy Claim**

Plaintiff alleges Dr. Marlar and the other defendants are conspiring to have him murdered by placing him in the same cell with an unnamed inmate who will kill Plaintiff. Plaintiff claims he is in a single cell in protective custody, with 15 active separatees against other prisoners who have threatened his life or have attacked and stabbed him. He claims he previously was housed in permanent protective custody at Lawton Correctional Center, but was transferred to OSP on March 15, 2015, to be murdered to spare the prison system

from paying his expensive medical bills.

Conclusory allegations of a conspiracy will not suffice. *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981). Allegations of a conspiracy, backed up with no factual showing of an agreement and concerted action amongst the defendants, are insufficient to support such a claim. *See Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir.), *cert. denied*, 513 U.S. 832 (1994). Plaintiff must establish an actual deprivation of his rights, in addition to proving that a conspiracy actually exists. *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990). Plaintiff has failed to meet this burden of providing evidence to support his claim. *See Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (holding that allegation against a group of defendants is too conclusory to establish personal participation on the part of any one of them).

Where, as here, a prisoner is proceeding *in forma pauperis*, the Court must dismiss a claim if, at any time, the Court determines it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). *See also* 28 U.S.C. § 1915A(b)(1). Because the Court finds Plaintiff's conspiracy claim meets these criteria, the claim is dismissed as frivolous or malicious and for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B).

**Injunctive Relief**

Finally, Plaintiff requests injunctive relief requiring Defendant Dr. Marlar and the other defendants to transport him to OUMC/Presbyterian Hospital "to be given the Lupron

Depot shot at the Hospital by cancer specialist staff, for cancer PET scans and cancer doctor consultations, and any cancer treatments deemed necessary to save Plaintiff Fred Munn's life" (Dkt. 1 at 13). He also requests that the Court "order all defendant to stop trying to kill and murder me." *Id.* He further asks the Court to order Defendant Cherrie Guay to find his boots, tennis shoes and headphones in good condition or pay him $170.00 reimbursement. *Id.*

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). Furthermore, to be entitled to injunctive relief, the movant must establish a violation of his constitutional rights. *Rizzo v. Goode*, 423 U.S. 362, 377 (1976). Because Plaintiff has failed to plead any facts to sustain a finding of an ongoing constitutional violation, he is not entitled to injunctive relief.

**ACCORDINGLY,**

1. Defendant Cherrie Guay is DISMISSED WITHOUT PREJUDICE for Plaintiff's failure to properly serve her.

2. Defendants are GRANTED summary judgment for Plaintiff's claims concerning his medical treatment, the threat of pepper spray, and the claim concerning missing property.

3. Plaintiff's conspiracy claim is DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B) as frivolous or malicious and for failure to state a claim upon which relief may be granted.

4. Plaintiff's request for injunctive relief is DENIED.

5. This dismissal shall count as a "prior occasion" or "strike," pursuant to 28 U.S.C. § 1915(g).

**IT IS SO ORDERED** this 24th day of January 2019.

_Ronald A. White_
Ronald A. White
United States District Judge
Eastern District of Oklahoma